UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 20-cr-00091 (RBW) |
| | : | |
| **VINCENT SLATER,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM
AND MOTION FOR A DOWNWARD DEPARTURE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing and motion for a downward departure for the Defendant, Vincent Slater.

As described in the Statement of Offense supporting his plea agreement and elaborated at the trials of *United States v. Andre De Moya,* et al., Crim. No. 19-cr-00158 (RBW) (the "De Moya case") and *United States v. Davoud Jafari*, Crim. No. 19-cr-00228 (RBW) (the "Jafari case"), Defendant Slater, formerly the supervisor of the Adjustment Unit at the District of Columbia Office of Tax and Revenue ("OTR"), engaged in a multiyear bribery and wire fraud conspiracy. In exchange for bribes paid by business owners to evade their tax obligations through Defendant Anthony Merritt, Defendant Slater abused his position, breached his oath of office, hindered the mission of OTR, subjected unwitting coworkers to undeserved scrutiny, created an actual loss of approximately $3 million, and betrayed the public trust. This was serious misconduct with significant implications that cannot be condoned or tolerated.

But since being charged in this case, Defendant Slater has taken numerous steps that are also significant and mitigate greatly in his favor. He accepted responsibility soon after learning of

the Government's investigation; and as this Court witnessed, he provided substantial, essential, and irreplaceable assistance in the successful prosecutions of his three remaining codefendants—Merritt, De Moya, and Jafari—credibly testifying at their trials and providing some of the strongest evidence that their respective participation in the charged schemes was knowing and corrupt. Considering the Section 3553(a) factors in their entirety, and the Defendant's substantial assistance warranting a downward departure pursuant to U.S.S.G. § 5K1.1, the Government submits that a sentence consistent with the low end of Guidelines Offense Level 18 (27 to 33 months' imprisonment) is sufficient but not greater than necessary to comply with the purposes of sentencing. The Government further requests the Court to order Defendant Slater to pay $1,232,299.50 in restitution, with joint and several liability apportioned as set forth in the Government's Motion for Entry of Omnibus Restitution Order (ECF No. 42).

I.   **Procedural Background**

a.  **Defendant Slater's Cases**

On May 15, 2019, a grand jury returned a nine-count indictment in the De Moya case charging Defendants De Moya, Merritt, and Slater, with Conspiracy, Bribery, and Wire Fraud. *See* 19-cr-158, ECF No. 1. In general, the indictment alleged that from approximately 2012 to 2017, Defendant De Moya, a business owner, paid bribes through Defendant Merritt to Defendant Slater in exchange for Defendant Slater's assisting Defendant De Moya in evading business tax obligations owed by his own businesses and those of his associates, Charles Zhou and Arman Amirshahi. The indictment also included a forfeiture allegation.

On July 3, 2019, a grand jury returned a six-count indictment in the Jafari case against Defendants Jafari, Merritt, and Slater, for Conspiracy, Bribery, and Wire Fraud. *See* 19-cr-00228, ECF No. 1. The indictment alleged a similar parallel conspiracy, this time involving business

owner Jafari.

Defendant Slater began debriefing with the government in October 2019. On June 16, 2020, pursuant to a cooperation plea agreement, the United States filed a one-count Information charging him with Bribery in violation of 18 U.S.C. § 201 and including a forfeiture allegation. Case No. 20-cr-00091, ECF No. 1. Defendant Slater entered a guilty plea on June 25, 2020. *Id.* 6/25/2020 Minute Entry. The same date, the Court entered a Consent Order of Forfeiture in the amount of $75,202. *Id.* ECF No. 6. Sentencing is set for April 18, 2024. The conduct encompassed by the Statement of Offense in support of the guilty plea included the previously charged conduct as well as similar conduct involving uncharged business owners. *Id.* ECF No. 4. Pursuant to the plea agreement, at sentencing, the Government will request dismissal of the remaining charges in the De Moya and Jafari cases. *Id.* ECF No. 5.

On May 16, 2022, Defendant Merritt pleaded guilty to both indictments pursuant to cooperation plea agreements with the government. *See* Case No. 19-cr-00158, 5/16/22 Minute Entry, ECF No. 126; Case No. 19-cr-00228, 5/16/22 Minute Entry, ECF No. 100. But at his scheduled sentencing hearing on November 16, 2022, Defendant Merritt—through counsel— recanted his prior under oath admissions of guilt. The Court then vacated his plea with his consent. *See* Case No. 19-cr-00158, 11/16/22 Minute Entry, ECF No. 161; Case No. 19-cr-00228, 11/16/22 Minute Entry, ECF No. 130.

The De Moya case proceeded to trial on March 22, 2023. On June 7, 2023, the jury found Defendant De Moya guilty of Conspiracy, Bribery, and two counts of Wire Fraud. The jury found Defendant De Moya not guilty of four Wire Fraud counts. The jury found Defendant Merritt guilty on all counts. *See* Case No. 19-cr-00158, 6/7/2023 Minute Entry. On September 26, 2023, Defendant Merritt pleaded guilty without any plea agreement to all counts of the Jafari case

indictment. *See* Case No. 19-cr-00228, 9/26/2023 Minute Entry. The following day, Defendant Jafari proceeded to a jury trial by himself. On October 10, 2023, the jury rendered a guilty verdict against Jafari on all five counts in which he was charged. *See* Case No. 19-cr-00228, 10/10/2023 Minute Entry.

On January 25, 2024, Defendant Jafari was sentenced to a total of 24 months' incarceration and 3 years' supervised release, plus restitution in the total amount of $192,832.81. *See* Case No. 19-cr-00228, 1/25/2024 Minute Entry. The same date, Defendant De Moya was sentenced to a total of 30 months' incarceration, 3 years' supervised release, and 200 hours of community service. *See* Case No. 19-cr-00158, 1/25/2024 Minute Entry. On February 23, 2024, Defendant Merritt was sentenced (in both cases, concurrently) to a total of 110 months' incarceration and 3 years' supervised release, plus restitution in the total amount of $736,536.52. *See* Case No. 19-cr-00158, 2/23/2024 Minute Entry; Case No. 19-cr-00228, 2/23/2024 Minute Entry.

### b. Related Cases

Defendant Zhou, an owner of several restaurants and bars, began assisting the government in its investigation shortly after the FBI executed a search warrant at his premises, in December 2017. On February 11, 2019, the United States filed a one-count Information charging him with Bribery. *See* Case No. 19-cr-00047, ECF No. 1. Pursuant to a cooperation agreement, Defendant Zhou entered a pre-indictment guilty plea to one count of bribery on February 26, 2019. *Id.* 2/26/2019 Minute Entry, ECF No. 7. On April 4, 2024, he was sentenced to five years' probation with conditions including 14 months' home confinement and 200 hours of community service. He was also ordered to pay restitution in the total amount of $518,703.71. *Id.* 4/4/2024 Minute Entry.

Defendant Amirshahi, an owner of several restaurants, bars, and nightclubs, began assisting the government in its investigation shortly after the FBI executed a search warrant at his premises,

4

in May 2018. On November 8, 2018, the United States filed a one-count Information charging him with Bribery. *See* Case No. 18-cr-00335, ECF No. 1. Pursuant to a cooperation agreement, Defendant Amirshahi entered a pre-indictment guilty plea to one count of bribery on January 17, 2019. *Id.* 1/17/2019 Minute Entry, ECF No. 6. His sentencing is set for April 19, 2024.

## II.     Factual Background

Under oath, Defendant Slater stipulated to a set of facts in support of his guilty plea (Case No. 20-cr-00091, ECF No. 6), and he testified consistent with that set of facts at the De Moya trial in March 2023 and the Jafari trial in September 2023. In summary, he admitted that between 2012 and 2017, he was a supervisor at OTR and that he owed a duty to the District of Columbia, OTR, and District citizens to perform his duties and responsibilities in their best interest, including ensuring that individuals and businesses satisfied their tax obligations. Instead, he conspired with Defendant Merritt—who acted as a middleman between Defendant Slater and District business owners—to accept bribes in exchange for assisting the business owners in evading their tax obligations. Typically, he admitted, he and Defendant Merritt charged business owners half the amount sought to be evaded. Defendant Slater further admitted that he regularly used other unwitting employees' names or computer accounts to perform official and/or fraudulent acts in furtherance of the scheme. Finally, he admitted that his conduct resulted in losses to the District of Columbia of approximately $3 million.[1]

---

[1] According to the Statement of Offense, the total loss amount is slightly over $3 million. In preparing for sentencing, the Government reviewed the calculations it used to support the Statement of Offense and determined that certain transactions should be excluded. As a result, the total loss amount is now slightly under $3 million.

5

### III. The Recommended Sentence

#### a. The Applicable Sentencing Guidelines

To determine an appropriate sentence, the Court must first accurately calculate the Defendant's advisory Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). In the plea agreement the parties entered almost four years ago, the Government calculated Slater's Sentencing Guidelines as follows:

| | |
|---|---:|
| U.S.S.G. § 2C1.1(a)(1) – Base Offense Level | 14 |
| U.S.S.G. § 2C1.1(b)(1) – Offense involved more than one bribe | +2 |
| U.S.S.G. § 2C1.1(b)(2) / 2B1.1(b)(1)(I) – Loss Over $1,500,000 | +16 |
| **Total Offense Level** | **32** |

Further in accordance with the plea agreement, after a 3-point downward adjustment pursuant to U.S.S.G. § 3E1.1 based on Defendant Slater's clear acceptance of responsibility, his Adjusted Offense Level is 29. This Total Offense Level results in a Guidelines range of 87 to 108 months' imprisonment pursuant to the Sentencing Table located in U.S.S.G. Ch. 5 Pt. A, and a fine of $30,000 to $300,000 under U.S.S.G. § 5E1.2(c)(3). The fine, however, is capped by statute at $250,000 under 18 U.S.C. § 2571(b)(3). In November 2023, the Guidelines were amended to include a further 2-point reduction for offenders who meet the criteria identified in U.S.S.G. § 4C1.1. If Defendant Slater were sentenced in accordance with the calculations presented in his plea agreement, as the Government advocates, he would meet such criteria and his Adjusted Offense Level would be 27, resulting in a Guidelines range of 70 to 87 months' imprisonment and a fine of $25,000 to $250,000.

The Probation Officer has determined that Defendant Slater was an organizer or leader and that the criminal activity involved five or more participants or was otherwise extensive. PSR ¶ 67. Accordingly, the final PSR assesses a 4-point aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(a), raising Defendant Slater's Total Offense Level to 36 and his Adjusted Offense Level

to 33. The aggravating role adjustment also makes Defendant Slater ineligible for zero-point offender credit. *See* U.S.S.G. § 4C1.1(a)(10). At an Adjusted Offense level of 36, Defendant Slater's Guidelines range is 135 to 168 months' imprisonment and his fine range is $40,000 to $400,000 (capped at a statutory maximum of $250,000). In order to not breach the plea agreement and to give Slater the benefit of the bargain agreed upon almost four years ago, the Government is not seeking this four-level increase based on his role in the offense.

The Government does not dispute the Probation Officer's conclusion that Defendant Slater lacks the resources to pay a fine. PSR ¶ 119.

### b. The Defendant's Substantial Assistance

Under U.S.S.G. § 5K1.1, the government may move the Court for a downward departure based on a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." In determining the appropriate reduction, the Court may consider, among other things: "an evaluation of the significance and usefulness of the defendant's assistance;" the "truthfulness, completeness, and reliability of any information or testimony provided by the defendant;" and the "nature and extent" of the assistance. *See* U.S.S.G. § 5K1.1(a). In making this determination, "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance." *Id.* at cmt. n.3.

Defendant Slater first learned of the investigation when he was arrested in May 2019, and began debriefing in October 2019. Defendant Slater steadfastly appeared for multiple lengthy debriefing sessions, and consistently presented as calm, even-keeled, forthright, and remorseful. He provided truthful, complete, and reliable information about his own conduct (including occasional bribes he accepted before entering into the scheme with Merritt); the conduct of his charged co-conspirators, including Zhou, Amirshahi, De Moya, Jafari, and Merritt; and conduct

involving additional business owners who were not charged. He also debriefed about the roles of multiple other OTR employees whom he had involved, confirming as law enforcement suspected that their involvement was unwitting, and thus aiding in the closure of law enforcement's investigation.

On June 25, 2020, Defendant Slater entered a guilty plea pursuant to a cooperation agreement. At the hearing, he accepted responsibility for all his conduct, including uncharged conduct, agreed to pay restitution, and consented to entry of an Order of Forfeiture.

At the De Moya trial in March 2023, Defendant Slater testified in the Government's case-in-chief and in in its rebuttal case. His testimony provided some of the strongest evidence that Defendant De Moya's and Defendant Merritt's participation in the scheme was knowing and corrupt. In his initial testimony, he outlined how Defendant Merritt raised the prospect of a bribery scheme and how the two of them pursued that agreement for several years. He also discussed the personal meetings he had with Defendants Merritt and De Moya during the conspiracy. This testimony was key to shedding light on how both Defendants Merritt and De Moya knowingly participated in the scheme and how they both recruited others into it.

While testifying during the government's rebuttal, Defendant Slater helped expose the numerous lies to which Defendant Merritt had testified in his defense. For example:

- Defendant Merritt claimed to have only met Defendant Slater because Defendant Slater was assigned as a customer service representative for one of Defendant Merritt's taxpayer-customers, but Defendant Slater described how he had known Defendant Merritt for years before the scheme started and further described how it would not have been possible for him to have been a customer service representative working on a taxpayer's account;

- Defendant Merritt claimed that he had no idea what Defendant Slater was doing, but Defendant Slater explained how Defendant Merritt identified accounts for Defendant Slater to work on by providing Defendant Slater with the specific employer identification numbers (EINs) and pointing him to the business owners who were seeking fraudulent adjustments; and

- Defendant Merritt's claim that he had only provided Defendant Slater with nominal amounts of money for things like "gas" and for "thank you" payments was rebutted by Defendant Slater's description of Defendant Merritt's role in fee setting (they jointly agreed to charge business owners about half the amount of the taxes that were owed) and his testimony describing how they split thousands of dollars in proceeds on multiple occasions.

Defendants Merritt and De Moya were convicted at trial. Defendant Slater's credible rebuttal testimony likely played an important role in Defendant Merritt's decision to plead guilty at the beginning of the Jafari trial.

Defendant Slater testified for a third time during the Jafari trial in September 2023, where his truthful, complete, and reliable testimony again played a key role. By way of example, Defendant Slater testified about how he created fake payment posting vouchers at Defendant Jafari's request and how he often handed those fake documents directly to Defendant Jafari at OTR after Defendant Jafari had given bribe payments to Defendant Merritt off-premises and outside of Defendant Slater's presence. That testimony helped demonstrate Defendant Jafari's clear knowledge, understanding, and intent, and it undermined the defense theme that Defendant Jafari was duped by Defendants Merritt and Slater. Defendant Jafari was convicted at trial.

Through both trials, Defendant Slater's demeanor and testimony were consistent with his debriefing sessions and his testimony was corroborated by the additional evidence presented. As illustrated by the jury verdicts in both cases, his testimony at both trials was extremely credible.

Defendant Slater's commitment to cooperating is difficult to overstate given a host of obstacles and personal setbacks he experienced over the period of his cooperation. He reliably appeared for countless hours of debriefings, witness preparation, and trial testimony for four years despite:

- Being the primary caregiver for his mother, who was bedridden with illness until she passed away at age 75 in August 2020;
- Being involved in a debilitating car accident in December 2022 that caused severe injuries that will eventually require a hip replacement;
- Being the sole family member to assist in the care of his 56-year-old brother, who was bedridden with illness throughout 2023;
- Maintaining his brother's residence and taking over his brother's role as executor of their mother's estate; and
- Ensuring proper services for his 7-year-old son, who has been diagnosed with dyslexia.

In sum, Mr. Slater deserves a significant downward departure under §5K1.1 for his substantial assistance in the prosecutions of Defendants Merritt, De Moya, and Jafari.

### c.  The Appropriate Sentence Considering the Section 3553(a) Factors

To determine a sentence that is sufficient, but not greater than necessary, after the Court accurately calculates the Defendant's advisory Guidelines range (including application of any applicable departures), it considers the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. 38 at 49-50 (2007). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to promote respect for the law, just punishment, and adequate deterrence; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The Defendant engaged in a scheme that lasted years, committing bribery and fraud on a repeated basis. In so doing, he abused his position at OTR, breached his oath of office, deprived the District of approximately $3 million in much-needed tax revenues, triggered law enforcement scrutiny of coworkers who were unwittingly implicated by his conduct, and betrayed the public trust. The Defendant also accepted responsibility very soon after being charged and began a lengthy and productive process of cooperation. These acts demonstrate a respect for the rule of law and signify that it is unlikely he will re-offend. Further, although it is the Government's

position that the best way to avoid sentencing disparities is for Courts to impose sentences within advisory Guidelines ranges, it is an unavoidable fact, based on Judiciary Sentencing Information provided by the Probation Officer, that *non-cooperating* defendants facing the same potential Total Offense Levels and Guidelines ranges as Defendant Slater *before factoring in Defendant Slater's substantial assistance* have received significantly reduced sentences:

| Final Offense Level | Guidelines Range | Judiciary Sentencing Information for the Last Five Fiscal Years (2019-2023) for Non-Cooperating Defendants Whose Primary Guideline was § 2C1.1, with a Final Offense Level of 33 and a Criminal History Category of I |
|---|---|---|
| 27 | 70-87 months | There are a total of 19 defendants in this category. All 19 received a sentence involving imprisonment. The average length of imprisonment imposed, and the average sentence imposed, was 48 months. The median length of imprisonment imposed, and the median sentence imposed, was also 48 months.[2] |
| 29 | 87-108 months | There are a total of 15 defendants in this category. 14 out of 15 defendants received a sentence including imprisonment. The average length of imprisonment imposed was 46 months.[3] The median length of imprisonment imposed was 41 months.[4] For all 15 defendants, the average sentence imposed was 43 months.[5] The median sentence imposed was 40 months.[6] |
| 33 | 135-168 months | There are a total of 9 defendants in this category. All 9 received a sentence including imprisonment. The average length of imprisonment imposed, and the average sentence imposed, was 71 months.[7] The median length of imprisonment imposed, and the median sentence imposed, was 66 months.[8] |

Similar discounts are also evident in the sentences that have been imposed on non-cooperating defendants in these cases:

---

[2] 48 months is a 38% decrease from the middle of the range.
[3] 46 months is a 52% decrease from the middle of the range.
[4] 41 months is a 57.5% decrease from the middle of the range.
[5] 43 months is a 55.5% decrease from the middle of the range.
[6] 40 months is a 58.5% decrease from the middle of the range.
[7] 71 months is a 52.5% decrease from the middle of the range.
[8] 66 months is a 56% decrease from the middle of the range.

11

| Defendant | Total Offense Level | Guidelines Range | Sentence |
|---|---|---|---|
| De Moya | 24 | 51 to 63 months | 30 months[9] |
| Jafari | 24 | 51 to 63 months | 24 months[10] |
| Merritt | 36 | 188 to 235 months | 110 months[11] |

There is little doubt that during the years the conspiracy was taking place, Defendants Merritt and Slater were the most culpable conspirators. But Defendant Slater's conduct following the indictment is easily, and starkly, different from Defendants Merritt, De Moya, and Jafari. This is particularly true of Defendant Merritt, who since being charged not only failed to accept responsibility early but proceeded to perjure himself at the De Moya trial, severely minimized his offense conduct during his day-of-trial plea in the Jafari case and lied to the Court at his sentencing hearing. Thus, while Defendants Merritt and Slater were similarly at the center of the origin of the conspiracy underlying these cases, for the purposes of the 3553(a) factors, Defendant Slater's post-indictment conduct easily differentiates him from Defendant Merritt (and, in many respects, from Defendants De Moya and Jafari as well).

---

[9] 30 months is a 46.5% decrease from the middle of the range.
[10] 24 months is a 57.5% decrease from middle of the range.
[11] 110 months is a 47% decrease from the middle of the range.

**IV.**     **Conclusion**

In consideration of the Section 3553(a) factors and given Defendant Slater's substantial assistance to the Government's investigation, the Government recommends that the Court impose a sentence at the low end of Guidelines Offense Level 18 (27 to 33 months' incarceration) and order him to pay $1,232,299.50 in restitution, with joint and several liability apportioned as set forth in the Government's Motion for Entry of Omnibus Restitution Order.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:     /s/ *Emily A. Miller*
        EMILY A. MILLER, D.C. Bar No. 462077
        TIMOTHY VISSER, D.C. Bar No. 1028375
        CHRISTINE MACEY, D.C. Bar No. 1010730
        Assistant United States Attorneys
        Fraud, Public Corruption, and Civil Rights Section
        U.S. Attorney's Office
        601 D Street NW
        Washington, D.C. 20530